UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PHILIP A. BROWNE,<br><br>              Plaintiff,<br><br>     v.<br><br>POTOMAC ELECTRIC POWER COMPANY,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:05CV01177 (RWR)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION TO DISMISS**

The Complaint fails to state a claim for workplace "retaliation," and Defendant Potomac Electric Power Company ("Pepco"), by counsel, moves that it be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

The retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), should be dismissed because Plaintiff did not exhaust his administrative remedies, as required before bringing an action in court under that statute. Even if that claim had been properly exhausted, it (as well as the identical retaliation claims under the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401 et seq., and 42 U.S.C. §§ 1981 and 1981a), in any event fails as a matter of law because Plaintiff does not allege any actionable adverse employment action taken by Pepco subsequent to his protected activity.

The grounds for this Motion are set forth more fully in the attached Memorandum of Points and Authorities. A proposed Order is attached.

Respectfully submitted,

_____/s/_____
William P. Flanagan, #419287
Hogan & Hartson L.L.P.
8300 Greensboro Drive, Suite 1100
McLean, Virginia 22102
(703) 610-6100 (phone)
(703) 610-6200 (fax)

Counsel for Defendant Potomac Electric Power Company

Of Counsel:

Jill D. Flack, #420020
Assosiate General Counsel
Potomac Electric Power Company
701 Ninth Street, N.W.
10th Floor
Washington, D.C. 20068

Dated: July 1, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PHILIP A. BROWNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05CV01177 (RWR) |
| ) | |
| POTOMAC ELECTRIC POWER ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION TO DISMISS**

This is a straightforward claim of alleged workplace retaliation that should be dismissed.

**Background**

Pepco is a public utility company that delivers electricity to customers in Washington, D.C. and suburban Maryland. Plaintiff Philip A. Browne, who is black, has been employed by Pepco since February 2001. Complaint ("Comp.") ¶ 3. He was hired for a management position – Supervisor Engineering Liaison – in the Distribution Engineering and Construction Department. Id. In that position, Mr. Browne is a liaison with local government agencies, facilitating the process of obtaining permits for Pepco construction projects relating to the installation and relocation of electrical services. (Declaration of Eileen M. Appuglies ("Decl.") ¶ 4, attached hereto as Exhibit A.) During all relevant times, Mr. Browne reported to Kenneth Farrell, Manager of Distribution and Transmission Engineering, who is white. Id.

**Browne's Non-Selection for a Pepco Position and Agency Charge.** On September 10, 2003, pursuant to its written job-posting policy, Pepco advertised a vacancy

for the position of General Supervisor Distribution Support Services. Comp. ¶ 4. Mr. Browne and three other candidates applied for the position, interviews were conducted, and ultimately another candidate – who was white – was selected to fill the vacancy in early November 2003. Decl. ¶ 5; Comp. ¶ 4.

Five months later, on May 6, 2004, Mr. Browne challenged his non-selection by filing a charge of discrimination with the D.C. Office of Human Rights ("DCOHR"), alleging that he was more qualified than the person selected for the vacant position and that his non-selection was due to his race. Decl. ¶ 6; Comp. ¶ 5. Following an investigation, the DCOHR issued a Letter of Determination on December 13, 2004 and found no probable cause of discrimination. Decl. ¶ 7. The Equal Employment Opportunity Commission ("EEOC") adopted the DCOHR's no probable cause determination on March 28, 2005. Id.

Significantly, Mr. Browne has not pursued in this case his discrimination-in-promotion claim, and he has conceded that his non-selection for the position to which he applied – which was reviewed by the DCOHR and the EEOC – was based on non-discriminatory factors.

**Discipline of Browne for Workplace Conduct.** Months after the filing of the DCOHR Charge, Pepco disciplined Mr. Browne under its written progressive discipline policy for incidents that occurred on April 16 and June 23, 2004. Comp. ¶¶ 7, 11. In this case, Mr. Browne challenges the discipline that resulted from these incidents as unlawful "retaliation" for filing the DCOHR charge. Id.

The April incident involved a reminder to Mr. Browne of the need to instruct his subordinates to follow the company's employee-parking policy. Decl. ¶ 9. When Mr. Browne was first asked to counsel an employee about her persistent disregard of the policy, he balked, criticized the policy and his fellow-supervisor who was charged with administering it, and refused to remind his subordinate of the need to follow the policy. Id.

After Mr. Browne's manager reiterated the need for employees to follow the policy, Mr. Browne instructed the subordinate as requested. Id.

The second incident – in June – was more serious. On June 23, 2004 – on the eve of a vote on the ratification of the 2004 Collective Bargaining Agreement between Pepco and the Union that represents hundreds of its employees – Mr. Browne sent a letter to his manager stating his strong disagreement with the position Pepco had taken during negotiations on a job classification issue. Decl. ¶ 10. Significantly, Mr. Browne sent a copy of his letter criticizing Pepco's position to Union officials. Id. Because Pepco determined that it was highly inappropriate for a non-Union, management employee to criticize the company's negotiating position to the Union on the eve of the vote on the agreement, Pepco's Vice President of Asset Management directed Mr. Browne to refrain from communicating with the Union without first consulting with his manager. Decl. ¶ 11. In complete disregard of the instruction from the vice president, Mr. Browne sent another communication to the Union on the same topic several days later. Id.

Pepco reviewed the April and June incidents and, pursuant to its progressive discipline policy, issued a "Decision-Making Leave," or "DML" on July 29, 2004. Decl. ¶¶ 12-13. A DML is usually the final level of formal discipline prior to discharge, but it may be issued when there has been no prior discipline if the employee has committed serious infractions. Decl. ¶ 14. As part of the DML process, Pepco managers counseled Mr. Browne about the gravity of the April and especially the June incidents and, like others on a DML, he was given time off work for one day (with pay) to consider whether, in light of his infractions, he wished to continue his Pepco employment. Decl. ¶¶ 15-16. On August 26, 2004, Mr. Browne informed Pepco that he wanted to remain a Pepco employee. Decl. ¶ 16. Accordingly, he remains employed at Pepco in the same position he held as before the

incidents giving rise to the DML.  Id. 1/  And, significantly, rather than suffering adverse consequences since the DML, Mr. Browne received a substantial pay increase (from $70,410 to $72,522 annually), effective March 1, 2005, and a payment of $5670.37 under Pepco's Exempt Incentive Plan on April 1, 2005.  Id.

Mr. Browne does not allege anywhere in his Complaint that the infractions underlying the DML did not occur, nor does he claim that these incidents did not warrant discipline.  Nevertheless, Mr. Browne filed this action on June 13, 2005, contending that the issuance of the DML, as well as two other minor actions taken by Pepco, were in retaliation for his filing a discrimination charge with the DCOHR.  His Complaint relies on Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e et seq., the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401 et seq., and 42 U.S.C. §§ 1981 and 1981a.  A review of the Complaint makes clear that Mr. Browne's retaliation claims under all three statutes should be dismissed.

## Argument

A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief."  Morgan v. Int'l Bank for Reconstruction and Dev., 752 F. Supp. 492, 493 (D.D.C. 1990) (quoting Conley v. Gibson, 355 U.S. 41, 45 (1957)).  As set forth below, the Complaint fails to state a claim.  2/  The Title VII claim fails in the first instance because

---

1/    Had Mr. Browne decided not to return to work at Pepco, he would have been eligible for a separation package.  Decl. ¶ 15; Comp. ¶ 9.  Pursuant to policy, Mr. Browne will remain on DML status for 18 months.  Decl. ¶¶ 15-16.  During this period, he will be expected to perform at a "fully acceptable" level in every area of his position.  Decl. ¶ 15.  Any performance-related problem that arises during this period and that requires formal discipline will result in Mr. Browne's termination.  Id.

2/    Because the allegations in the Complaint are not clearly stated, Pepco has attached the Appuglies Declaration and several documents to this memorandum to provide background to assist the Court in evaluating the Complaint.  To the extent the Court relies on

Mr. Browne has not exhausted his administrative remedies. Furthermore, the claims under all three statutes should be dismissed because Mr. Browne has not alleged any conduct by Pepco that rises to the level of an adverse employment action, as required to state a prima facie claim for discriminatory retaliation.

I. **The Title VII Claim Must Be Dismissed Because Plaintiff Did Not Exhaust His Administrative Remedies**

Under Title VII, a plaintiff must exhaust the remedies available through administrative processes before bringing an action in court. 42 U.S.C. § 2000e-5(e)(1); Washington v. Washington Metro. Area Transit Auth., 160 F.3d 750, 752 (D.C. Cir. 1998). The purpose behind this requirement is to give the administrative agency notice of a claim and the opportunity to handle it internally. Velikonja v. Mueller, 315 F. Supp. 2d 66, 74 (D.D.C. 2004).

The Supreme Court recently stated that, with respect to Title VII, "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108 (2002) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)). In Morgan, the Court held that every single act of retaliation claimed by a plaintiff must fall within the statutory time period prescribed by Title VII in order for the plaintiff to recover for that act. 536 U.S. at 113-115.

Applying the holding in Morgan, this Court recently found that a plaintiff must exhaust his administrative remedies with respect to each discrete act of retaliation, even where the retaliation claims are based on the filing of administrative complaints. Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 148-49 (D.D.C. 2005). 3/ Other courts addressing

---

any material attached to this memorandum, it may treat the Motion as one for summary judgment under Federal Rule of Civil Procedure 56.
3/    The plaintiff in Romero-Ostolaza had filed one administrative charge with the EEOC on January 31, 2002 alleging discriminatory non-promotion, another charge on May 24, 2002

this question have similarly applied Morgan to require exhaustion for discrete claims of discrimination occurring after the filing of charges. See, e.g., Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003); Velikonja, 315 F. Supp. 2d at 74-75; Bowie v. Ashcroft, 283 F. Supp. 2d 25, 34-35 (D.D.C. 2003).

Although Mr. Browne filed an administrative charge with the DCOHR in May 2004, that charge was based only on his failure to be selected to the General Supervisor position, not on the alleged retaliation giving rise to his Complaint. Mr. Browne has not alleged, nor does Pepco have any notice that he filed any administrative charges claiming any act of retaliation by Pepco, let alone the three specific adverse employment actions he claims to have suffered. Accordingly, Mr. Browne's Title VII claim must be dismissed for failure to exhaust administrative remedies.

## II. The Title VII, DCHRA And Section 1981 Claims Must Be Dismissed Because Plaintiff Has Not Alleged Any Adverse Employment Actions

The Title VII claim – and the DCHRA and Section 1981 claims – should be dismissed on their merits as well. In order to state a prima facie claim of retaliation under Title VII, Plaintiff must demonstrate that: (1) he was engaged in protected activity; (2) he was subject to an adverse action by his employer; and (3) there existed a causal link between the adverse action and the protected activity. Jones v. Washington Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000). 4/

---

alleging retaliation by being placed on an Employee Proficiency Plan ("EPP"), and a final charge on August 22, 2003 alleging retaliatory termination. 370 F. Supp. 2d at 149. He then brought an action in court for retaliation, based in part on his filing of formal charges, and he alleged three adverse employment actions: his placement on the EPP, his placement on administrative leave, and his termination. Id. at 147. The Court found that because none of his administrative charges specifically alleged retaliation by placement on administrative leave, that claim was barred for failure to exhaust administrative remedies. Id. at 150.

4/    Claims brought under the DCHRA and Section 1981 are analyzed under the same framework as claims brought under Title VII. Hunter v. Ark Rests. Corp., 3 F. Supp. 2d 9, 14 (D.D.C. 1998).

Pepco concedes that Mr. Browne has properly asserted that he engaged in protected activity. 5/ But Plaintiff has altogether failed to allege that he suffered an actionable adverse action (element two of a Title VII claim), or that there was a causal connection between the protected activity and the adverse action (element three).

A Title VII adverse employment action is typically an "ultimate employment decision," such as hiring, discharging, promoting, and compensating. Lester v. Natsios, 290 F. Supp. 2d 11, 28 (D.D.C. 2003). Actions that do not rise to this level and do not result in any diminution of pay or benefits will only satisfy the statutory requirement if they have "materially adverse consequences affecting the terms, conditions, or privileges of employment." Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). None of the actions alleged by Plaintiff meets this standard.

Mr. Browne's primary contention is that the issuance of the DML is an adverse employment action. Comp. ¶¶ 10-13. But the DML did not change his salary, position, or grade, and he does not allege that any of his other terms, conditions, or privileges of employment changed in any way as a result of the DML. In fact, as noted, since the DML was issued, Mr. Browne received a significant pay increase – underscoring that the DML did not have significantly adverse consequences on his employment. In any event, courts have consistently held that specific disciplinary actions similar in nature and degree to the DML do not rise to the level of adverse employment actions. See Brown, 199 F.3d at 450 (letter of admonishment memorializing conflicts between plaintiff and her supervisors and co-workers was not an adverse employment action); Mattern v. Eastman Kodak Co., 104 F.3d 702, 708

---

5/   Mr. Browne's protected activity consisted of his filing of an administrative charge for discriminatory non-selection on May 6, 2004.

(5th Cir. 1997) (being placed on "final warning" does not constitute an adverse employment action); Boykin v. England, 2003 WL 21788953, at *4 n.5 (D.D.C. July 16, 2003) (temporary suspension with pay is not an adverse employment action); Dickerson v. SecTek, Inc., 238 F. Supp. 2d 66, 79-80 (D.D.C. 2002) (paid administrative leave is not an adverse employment action). In short, Plaintiff has not alleged any consequences from the DML that satisfy the standard for an adverse employment action set forth under Title VII.

Plaintiff also claims to have suffered an adverse employment action when Mr. Farrell told him he would be disciplined for his inquiry regarding Renée Carter-Moton's failure to get an upgrade. Comp. ¶ 7. This allegation is a distortion of the facts 6/, but even if it were true, it still does not constitute an adverse employment action. Plaintiff alleges absolutely no consequences from Mr. Farrell's comment – that is, he does not claim that he suffered a decrease in pay or benefits, or that he suffered any change to his terms, conditions, or privileges of employment as a result of this conversation. Threats and warnings of disciplinary action, with no negative consequences, simply do not satisfy the Title VII standard for adverse employment actions. Hussain v. Principi, 344 F. Supp. 2d 86, 106-107 (D.D.C. 2004) (threat of termination is not adverse employment action); Bunyon v. Henderson, 206 F. Supp. 2d 28, 30 (D.D.C. 2002) (warning of possible disciplinary action is not adverse employment action).

Finally, Plaintiff claims that his 2004 performance appraisal was downgraded from "outstanding" to "needs improvement" as a result of his protected activity. Comp. ¶ 14.

---

6/    In paragraph 7 of the Complaint, Plaintiff appears to be referencing a meeting he had with Mr. Farrell on July 16, 2004 during which they discussed his letter to the Union. Mr. Farrell informed Mr. Browne that this letter was inappropriate and suggested that he might be disciplined for it. Decl. ¶ 12. Mr. Browne's letter had criticized the failure to upgrade certain positions, including Ms. Carter-Moton's, but the reason for the discipline was not the fact that he complained. Rather, Mr. Farrell explained that Pepco was considering discipline because Mr. Browne communicated to the Union his disagreement with the company's position the day before the vote on the Collective Bargaining Agreement. Id.

Plaintiff again misstates the facts relevant to this evaluation, 7/ but even if they were true, he still cannot demonstrate that the evaluation was an adverse employment action. Courts have repeatedly held that performance evaluations that do not have a tangible impact on the terms and conditions of a plaintiff's employment are not adverse employment actions. See Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001); Brown, 199 F.3d at 458. Even evaluations falling below the "satisfactory" level are not considered adverse actions if they are not accompanied by decreased pay or benefits, or any other negative effects on the terms and conditions of employment. Mack v. Strauss, 134 F. Supp. 2d 103, 112-113 (D.D.C. 2001) (plaintiff's "unsatisfactory" performance rating was not an adverse employment action where there was no evidence that it denied him any awards, benefits, transfers, or promotions, or caused any other tangible negative effects). In this case, Mr. Browne has not alleged any negative consequences from his 2004 performance evaluation whatsoever, let alone any consequences that are materially adverse to the terms and conditions of his employment such that they could be considered adverse employment actions.

In sum, Plaintiff has failed to allege any facts supporting his claims that Pepco subjected him to an adverse employment action. None of the three alleged instances of retaliation – the DML, the "threat" of discipline, and the negative performance evaluation – satisfies the standard set forth in the law of this circuit. Accordingly, Plaintiff can prove no

---

7/     Mr. Farrell completed Mr. Browne's 2004 performance evaluation on January 15, 2005. Decl. ¶ 17. Mr. Browne received an overall rating of "fully acceptable" – which allowed him to be eligible for a pay increase – and was merely rated as "needs improvement" in two out of ten categories of performance. Id. Moreover, while the incidents underlying the DML contributed to Mr. Browne's "needs improvement" rating in the "Communication" category, the rating was not automatically reduced as a result of the DML; had he not been disciplined, he still would have received the same rating because of the April and June 2004 incidents. Id. Nevertheless, even if the evaluation was "downgraded" because of the DML, this negative consequence would not make the DML an adverse employment action because the appraisal had no tangible effect on Plaintiff's salary, grade, benefits, or any other terms or conditions of employment.

facts that would entitle him to relief, and his claims under Section 1981, the DCHRA, and Title VII should be dismissed.

## Conclusion

For the reasons set forth herein, Pepco respectfully requests that the Court grant its Motion to Dismiss.

Respectfully submitted,

_____/s/_____
William P. Flanagan, #419287
Hogan & Hartson L.L.P.
8300 Greensboro Drive, Suite 1100
McLean, Virginia 22102
(703) 610-6100 (phone)
(703) 610-6200 (fax)

Counsel for Defendant Potomac Electric Power Company

Of Counsel:

Jill D. Flack, #420020
Associate General Counsel
Potomac Electric Power Company
701 Ninth Street, N.W.
10th Floor
Washington, D.C. 20068

Dated: July 1, 2005

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of July, 2005, a true and accurate copy of the foregoing Motion to Dismiss was mailed, first class mail, postage prepaid, to:

Jerome E. Clair, Esq.
1200 G Street, NW
Suite 800
Washington, D.C. 20005

Counsel for Plaintiff

_____/s/_____
William P. Flanagan