UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Philip Browne :
   Plaintiff

V.    : Ca No. 05-1177 RWR

Potomac Electric Power
Company, :
   Defendant :

PHILIP BROWNE'S ANSWERS TO FIRST SET OF INTERROGATORIES

1. Identify each person who had knowledge, who claims to have knowledge, or who you believe had knowledge of any facts relating to the allegations raised in the Complaint, Defendants' Answer, and other pleading filed by any party, or any of the discovery responses from you of Defendant in this action (including without limitation your answers to these Interrogatories), and for each person identified in response to this Interrogatory, describe fully the specific facts within the knowledge of that person and how that person came to possess such knowledge.

Answer: Renee Moten-Carter is the persons who was being supervised my me when Ted A. Karnezis decided bargaining unit person could not park in gate 59 and Benning Road. I asked him to declare an exemption for her because she is a female and works late at night on many occasions. It was unsafe to require her to park the long distance from the building. She can explain what happened between me and Ted Karnezis. Pamela Browne can explain the mental suffering I endured resulting from these acts of discrimination and retaliation. John Keiller can explain the mental suffering I suffered resulting from the acts of discrimination and retaliation.

2. Identify and describe with particularity each alleged incident of unlawful retaliation, if any ,

1

that you contend occurred during the course of your employment with Pepco and for each alleged incident, identify: all circumstances of its occurrence (including without limitation when and where it occurred); all individuals involved in and/or responsible for the alleged incident, and for each such individual, the specific nature of each such person's actions and/or responsibility in connection with the alleged incident; all individuals who had personal knowledge of the alleged incident; each similarly situated individual who was treated differently than you and how each such person was treated differently, and why you contend the alleged incident constituted unlawful retaliation.

Answer: September 10, 2003 I applied for a position of General Supervisor Distribution Support Services and was denied because n of my race. The job was given to a less qualified white man on November 3, 20003. May 6, 2004 I filed a charge of discrimination with the District of Columbia's Office of Human Rights. After mediation failed to resolve the dispute I was called into an office by Mr. Farrell, Mr. Gausman and Ms. Appluglies on July 16, 2004 and told they were considering issuing me a Decision Making Leave because of incidents that occurred long before my charge of discrimination was filed. This meeting and the subsequent DML was a n act of retaliation because I helped Renee Carter and because I filed the discrimination charge.

3. Identify and describe with particularity each instance in which you complained (formally or informally, orally or in writing) to any one at Pepco about alleged discrimination on the basis of race, harassment based on race, or any other conduct relevant to the claims in the Complaint, and for each alleged complaint, identify: the subject matter of the complaint; the individual(s) to whom you complained; the date of the complaint; whether the complain was made orally or in writing; and any witnesses to the complaint.

Answer: September 17, 2003 I complained to Human Resources in writing regarding the discrimination involved in the process of selecting a candidate for the position of General Supervisor Distribution Support Services.

4. Identify any and all Charges of Discrimination that you filed with the District of Columbia Office of Human Rights ("DCOHR") on or about May 6, 2004) that you filed against any current, former, or prospective employer with the Equal Employment Opportunity Commission, the DCOHR, any other governmental agency or body, or any federal, state, or local court.

Answer: My charge to D.C. Office Of Human Rights was as follows: I was hired on February 21, 2001 as a Supervisor, Engineering Liaison. My last performance evaluation was for the year of 2003 and was rated as "good". I applied for a promotion to the position of General Supervisor Distribution Support Services on September 10, 2003 and was denied the promotion on November 3, 2003. The person selected for the promotion was a white male who has little supervisory experience, no college degree, and less applicable work experience that I have. I have significant supervisory experience, a college degree, and significant applicable work experience, all qualifications that were listed as requirements on the job announcement. When I questioned the process of selection in a letter sent within two weeks of my non-selection in November 2003 and again on March w1, 2004, I received no adequate response. I believe the process was discriminatory because Respondent has been cited for being discriminatory against minorities in te past.

5.If you contend that it was appropriate or that you were authorized to send the email on April 16, 2004 to your fellow supervisor Ted Karnezis (attached hereto as Exhibit 1) concerning Pepco's parking policy, state the bases for your contention. In so doing, identify each individual,

if any, who engaged in similar conduct and was treated differently than you.

Answer: When Ted Karnezis required bargaining unit employees to park outside gate 59, I as the supervisor of a female Renee Carter, asked that a waiver be allowed for her to park inside the gate because she frequently worked at night and it was unsafe for her to have to walk the long distance to get to her car outside the gate. When I asked for this variance there were empty spaces in the gated area where Ms. Carter would park.

6. If you contend that it was appropriate or that you were authorized to refuse to instruct your subordinate to comply with the parking policy, state the bases for your contention. In so doing, identify each individual, if any, who engaged in similar conduct and was treated differently than you.

Answer: My response to Ted was as follows: Please see my email memo today. I had not opened this email. I fully support Ms. Carter-Moten's position and I am willing to take this matter up with any reasonable Pepco security personnel. As I stated in my earlier communication, please explain what PHI or Pepco policy that all pepco /PHI employees (exempt or bargaining unit) she has violated. If you would have read (and comprehended) all of my writing and/or communication on this matter since I came here, you would have noticed my abhorrence towards treating people separately. As a minority supervisor (over thirty years of supervision/ management experience) and as a Certified United Methodist Church Lay preacher, I have extreme difficulty in understanding a policy that does not consider the feelings or situations of the people involved.. I did request a waiver for job processors, Your response defied and objectivity and insinuated that you had your mind made up as to your treatment of my concerns. I also get the distinct impression that this parking situation consumes your tour of duty in your new

position

7. If you contend that it was appropriate or that you were authorized to send a copy to the Union of the June 23, 2004 memorandum you addressed to Mr. Ferrell (attached hereto as Exhibit 2) in which you criticized the position taken by Pepco in collective bargaining negotiations with the Union with respect to a job classification issue, and to send a second communication to the Union regarding the same subject (attached hereto as Exhibit 3) after being instructed by Mr. Gausman to refrain from such conduct, state the bases for your contention. In so doing, identify each individual, if any, who engaged in similar conduct and was treated differently than you.

Answer: The correspondence to Mr. Hawkins was a matter of keeping him informed of the status of the negotiations. This was an effort to resolve the issues. I asked Pepco on more than one occasion for their policy prohibiting me from commutating with the union. I have never received a response.

8. With respect to you allegation in Paragraph 7 of the Complaint, identify and describe with particularity your conversation with Mr. Ferrell (including the time and place of the conversation and any witnesses to it) during which he allegedly informed you that you would be disciplined because of your inquiry regarding Renee Cater-Moten's failure to receive an upgrade.

Answer: I don't recall any conversation with Kenneth Farrell regarding the DML. He sent me a letter dated September 2, 2004 regarding the decision to issue me a DML.

9. With respect to your allegation in paragraph 14 of the Complaint, identify and describe with particularity the bases for your contention that your 2004 performance appraisal was "downgraded" from "outstanding" to "needs improvement," as well as your basis for alleging that the rating could not be changed because of the DML in your personnel file.

Answer: Only the communications portion of my evaluation was downgraded not the entire evaluation. Karen Gentry-May told me my evaluation could not be changed because of the DML. I appealed the matter through mediation and it was not changed..

10. Identify any and all persons on whom you plan to rely as expert witnesses in this action , and for each expert identify: the expert's qualifications, all publications authored by the expert in the proceeding 10 years, the compensation to be paid for the expert's work and testimony, a list of any cases in which the expert has testified as a n expert at trial or by deposition within the proceeding five years, the subject area as to which the expert is expected to testify, the opinions that the expert is expected to testify to the bases and reasons for all such opinions, the data or other information considered by the expert, all documents relied on by the expert to form the basis of his/her opinion(s), and any exhibits to be used as a summary of or support for the opinions.

Answer: At this time I do not intend to call any expert.

11. State whether you contend that you experienced any physical, mental, or emotional distress as a result of Pepco's alleged conduct, and if your answer to this Interrogatory is yes, identify all physicians, medical professionals, psychiatrists, psychologists and other mental health professional, social workers, therapists, counselors, "professional help," or other health care providers whom you have consulted for any physical, mental, or emotional condition or distress from January 1, 2002 to the present, including without limitation the dates you consulted each such health care provider; the reason for and nature of the consultation (including the specific type of condition for which treatment was sought); the area of expertise of each such health care provider; the diagnosis, if any, of the health care provider; the treatment you received from the

health care provider; and the effect of such treatment on you and/or your wife and children.

Answer: Starting with the issuing of the Decision Making Leave I found I could not sleep, it had an adverse impact on me diabetes. I was irritable with my wife. I began to lose my appetite. Each time I am required to come I contact with Kenneth Ferrell, the feelings of anguish start all over.

12. State the amount of the monetary damages sought by you in connection with your allegations in the Complaint, itemize the amount, and explain fully how you calculated each such itemized amount.

Answer: I was irritable and unable to eat and sleep in my normal fashion. This lasted consistently for 60 days. I place a value of $500.00 on each day of mental anguish I suffered. That amounts to $300,000. If I had not received the DML I would have been promoted to Manager Overhead Maintenance and Construction in October 2004. This job paid $98,000. Instead I am paid $60,000. I have lost $30,0000 for two years. The amount lost is $60,000. For a total of $360,000.

13. Identify and describe with particularity all non-monetary relief sought by you in connection with you allegations in the Complaint.

Answer: I would like to be properly promoted to the next available job for which I cam qualified without any race discrimination involved in the process

I declare under penalty of perjury that the foregoing Answers To Interrogatories are true and correct.

_/s/ Philip A. Browne_   Dated: 12-21-2006
Philip A. Browne