IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PHILIP A. BROWNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05-cv-01177-RWR |
| ) | |
| POTOMAC ELECTRIC POWER ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant Potomac Electric Power Company ("Pepco"), by counsel, hereby opposes Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), and further moves this Court for summary judgment dismissing Plaintiff's Complaint. Plaintiff's Motion is utterly baseless – it merely restates the allegations in the Complaint with little to no evidentiary support, and Plaintiff neglects even to address the McDonnell Douglas burden-shifting framework, incorrectly concluding that making out a prima facie case is sufficient to succeed on his claim. As discussed further below, the undisputed evidence demonstrates that Plaintiff cannot establish a prima facie case of retaliation, but even if the Court finds that he can, Pepco has articulated legitimate, non-discriminatory reasons for his discipline, and there is no evidence establishing a genuine issue for trial. Accordingly, Pepco is entitled to judgment as a matter of law.

The grounds for this Opposition and Motion are set forth more fully in the attached Memorandum of Points and Authorities. A proposed Order is attached.

                                                Respectfully submitted,

/s/

William P. Flanagan (#419287)
Christine M. Burke (#492074)
HOGAN & HARTSON LLP
8300 Greensboro Drive, Suite 1100
McLean, VA 22102
703-610-6100 (telephone)
703-610-6200 (facsimile)

Counsel for Defendant Potomac Electric Power Company

Of Counsel:

Jill D. Flack, Esq.
Associate General Counsel
Pepco Holdings, Inc.
701 Ninth Street, N.W., Suite 1100
Washington, D.C. 20068
202-872-2756 (telephone)
202-872-3281 (facsimile)

Dated: March 30, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PHILIP A. BROWNE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05-cv-01177-RWR |
| ) | |
| POTOMAC ELECTRIC POWER ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

This is a straightforward case in which a plaintiff disgruntled for being disciplined has lodged baseless allegations of retaliation against his employer. Despite his allegations, however, Plaintiff's claim is premised only on his subjective beliefs and speculation, neither of which are sufficient to warrant a trial.

**I.      FACTUAL BACKGROUND**

Pepco is a public utility company providing electric services in the Washington metropolitan area. Pepco hired Plaintiff, who is black, in February 2001 as a Supervisor Engineering Liaison. Excerpts of Deposition of Philip A. Browne, attached hereto as Exhibit 1, at 15-16. During all relevant times, Plaintiff reported to Kenneth Farrell, Manager of Distribution and Transmission Engineering, who is white.

**Plaintiff's Non-Selection for a Pepco Position and Agency Charge.** In September 2003, Plaintiff applied for a General Supervisor position at Pepco, but he was not selected. Several months later, on May 6, 2004, Plaintiff filed a charge with the D.C. Office of Human Rights ("DCOHR"), alleging that he had not been chosen for the position because of his race. Declaration of Eileen Appuglies, attached as Exhibit A to Pepco's Motion to

Dismiss and reattached hereto as Exhibit 2, ¶ 6. Following an investigation, the DCOHR issued its Letter of Determination in December 2004, finding no probable cause that Pepco had discriminated against Plaintiff. Id. ¶ 7. Plaintiff is <u>not</u> pursuing his non-selection claim in this litigation.

**<u>Discipline of Browne for Workplace Conduct.</u>**  Months after the filing of the DCOHR Charge, Pepco took disciplinary action against Plaintiff by issuing him a Decision-Making Leave ("DML"). Ex. 2, at ¶ 8. During a DML, an employee is given a day off <u>with</u> <u>pay</u> to consider whether, in light of a serious disciplinary infraction, the employee wishes to continue his employment at Pepco. Id. ¶ 15.

The DML was based on two incidents of misconduct that occurred in April and June 2004. Id. ¶ 8; see also Ex. 1, at 63-64. The April 2004 incident involved Plaintiff's deliberate failure to ensure his subordinates' compliance with Pepco's parking policy. The policy had been in place for some time prior to April 2004, but it was reissued to all supervisors in early 2004. Ex. 1, at 92; see also E-mail of Apr. 16, 2004 from T. Karnezis to P. Browne, attached hereto as Exhibit 3. Plaintiff was aware that the parking rules had been recently reissued and that he was responsible for ensuring that employees reporting to him followed the rules. Ex. 1, at 93-95.

Nevertheless, one of Plaintiff's subordinates, Renée Carter-Moton, had been repeatedly violating the parking policy. See Ex. 3. Plaintiff was initially instructed by Ted Karnezis, the General Supervisor responsible for administering the parking policy, to ask Ms. Carter-Moton to follow the rules. See Ex. 1, at 128; Ex. 3. But Plaintiff, who disagreed with the policy, resisted any efforts to make his employees comply with it. See Ex. 1, at 95-96. Specifically, he sent Mr. Karnezis two e-mails on April 16 in which he criticized the parking policy, reprimanded Mr. Karnezis, and stated that he had no intention of requiring Ms. Carter-Moton to comply with the policy. See id. at 128-130; First E-mail of Apr. 16, 2004

from P. Browne to T. Karnezis, attached hereto as Exhibit 4; Second E-mail of Apr. 16, 2004 from P. Browne to T. Karnezis, attached hereto as Exhibit 5. It was not until Plaintiff was expressly instructed by his direct supervisor, Mr. Farrell, that he finally told Ms. Carter-Moton to follow the parking rules, and even then he made clear that he did not support the company's policy. See Ex. 1, at 95-96.

The second incident leading to Plaintiff's discipline was more serious. During 2004, Pepco was engaged in negotiations with the Union that represents many of its employees over a new collective bargaining agreement ("CBA"). Ex. 1, at 101. Plaintiff was fully aware of these discussions, as well as the fact that Pepco had a specific team charged with negotiating with the Union to reach an agreement. Id. But Plaintiff was not a member of the Pepco negotiating team, nor was he authorized by anyone at Pepco to negotiate or communicate with the Union regarding any of the issues that were being discussed. Id. at 102-04.

Despite this lack of authority, and Plaintiff's knowledge of the importance of Union negotiations from his previous experiences in unionized work environments, Plaintiff contacted the Union directly to discuss the job classifications of two of his subordinates, Ms. Carter-Moton and Rosa Daniels. See Ex. 1, at 32-33, 105-06. On June 23, 2004, the eve of the CBA ratification vote, Plaintiff sent a memorandum to his supervisor in which he criticized the company's position taken in negotiations that Ms. Carter-Moton and Ms. Daniels's jobs should not be upgraded to a higher pay classification. See id. at 106-09; E-mail of June 23, 2004 from P. Browne to K. Farrell et al., attached hereto as Exhibit 6. Significantly, he sent copies of this memorandum to two Union officials – John Coleman and Joe Hawkins – as well as to William Gausman, Pepco's Vice President of Asset Management, and Eileen Appuglies, Pepco's Human Resources Manager. Ex. 1, at 106-09; Ex. 6. Plaintiff had not sought or obtained anyone's authorization to contact the Union directly. Ex. 1, at

109-110. Indeed, upon receiving Plaintiff's memorandum, Mr. Gausman immediately sent him an e-mail instructing him to refrain from taking further action and making clear that his communication was wholly inappropriate. Id. at 118; E-mail of June 23, 2004 from W. Gausman to P. Browne, attached hereto as Exhibit 7. Despite Mr. Gausman's warning, Plaintiff sent another e-mail to Mr. Hawkins several days later, in which he again criticized Pepco's management in its dealings with the Union. See Ex. 1, at 120-22; E-mail of July 9, 2004 from P. Browne to J. Hawkins, attached hereto as Exhibit 8.

In light of this misconduct, Pepco determined that serious discipline was warranted. On July 16, Mr. Farrell met with Plaintiff to inform him that Pepco was considering discipline for the parking incident and the Union communication incident. See Ex. 1, at 134-35. Soon thereafter, on July 29, Mr. Farrell, Mr. Gausman, and Ms. Appuglies met with Plaintiff to issue the DML. Id. at 148; Ex. 2, at ¶ 13. As part of the typical DML process, Pepco counseled Plaintiff about the gravity of the April and especially the June incidents, and it gave him one day off work – with pay – to decide whether, in light of his infractions, he wished to continue his employment with Pepco. Ex. 2, at ¶ 15. Plaintiff decided that he wanted to remain at Pepco, and accordingly, he continued to work under the conditions of the DML for the next 18 months, until the DML expired on January 29, 2006. Id. ¶ 16; see also Ex. 1, at 68-69. He received a memorandum from Mr. Farrell confirming the issuance of the DML and explaining the reasons for it on September 2, 2004. Ex. 1, at 150; Memo. of Sept. 2, 2004 from K. Farrell to P. Browne, attached hereto as Exhibit 9.

During the 18-month period of the DML, Plaintiff held the same position as prior to the DML, with the same level of benefits. Ex. 2, at ¶¶ 15-16. Not only did his salary initially remain the same, but after the DML was issued, Plaintiff also received two pay increases in early 2005, and his performance evaluations after the DML were at the "fully

acceptable" level or above, which was the same rating he had always received prior to the DML. See Ex. 1, at 66-67, 152.

**Procedural History.** Plaintiff filed this action on June 13, 2005, contending that the DML and the performance evaluation he received after the DML constituted unlawful retaliation for his having filed a DCOHR charge with respect to his non-promotion. Plaintiff brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401 et seq., and 42 U.S.C. §§ 1981 and 1981(a). Pepco moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), and on July 3, 2006, this Court granted the motion in part and denied it in part. Memorandum Opinion and Order (Docket Entry #13) ("Opinion"), at 1. In particular, the Court dismissed Plaintiff's Title VII claim for failure to exhaust administrative remedies, see Opinion, at 4-5, but it allowed his DCHRA and Section 1981 claims to survive because it found that he had adequately pleaded an adverse action for purposes of a retaliation claim. See Opinion, at 5-7.

After discovery was completed, Plaintiff filed his Motion for Summary Judgment. Plaintiff's Motion is wholly without merit. The undisputed evidence demonstrates that Plaintiff cannot establish a prima facie case, despite his self-serving and conclusory statements to the contrary. Furthermore, even if he does state a prima facie case, Pepco has articulated legitimate, non-discriminatory reasons for its actions, and there is no suggestion of pretext. Accordingly, Plaintiff's remaining claims under the DCHRA and Section 1981 should be dismissed.

## II.      STANDARD OF REVIEW

A motion for summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Although

the evidence set forth by the non-movant must be believed and all justifiable inferences drawn in his favor, a non-moving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Harper v. Potter, 456 F. Supp. 2d 25, 28 (D.D.C. 2006) (citing Anderson, 477 U.S. at 252). If the non-movant fails to offer evidence on which the jury could reasonably find in his favor, then summary judgment is appropriate. Edwards v. U.S. Envtl. Protection Agency, 456 F. Supp. 2d 72, 82 (D.D.C. 2006) (citing Anderson, 477 U.S. at 252).

### III.     ARGUMENT

Because there is no direct evidence of discrimination, Plaintiff's retaliation claims must be analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Hunter v. Ark Rests. Corp., 3 F. Supp. 2d 9, 14 (D.D.C. 1998) (DCHRA and Section 1981 claims are analyzed under the same framework as Title VII claims). In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in statutorily protected activity; (2) the employer took an action against him that would have been materially adverse to a reasonable employee; and (3) a causal connection existed between the two. See Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2409 (2006); Edwards, 456 F. Supp. 2d at 82. If the plaintiff succeeds in stating a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Edwards, 456 F. Supp. 2d at 83. Assuming the employer can do so, the burden shifts back to the plaintiff to show that the employer's stated reason was merely a pretext for retaliation. Id.

In Plaintiff's Motion, he ignores this burden-shifting framework and incorrectly claims he succeeds on summary judgment because he allegedly states a prima facie case. As explained below, Plaintiff does not establish a prima facie case, but even if he

did, Pepco has satisfied its burden to articulate a legitimate, non-discriminatory reason for disciplining Plaintiff, and there is absolutely no evidence of pretext.

### A. Plaintiff Cannot Establish A Prima Facie Case Of Retaliation

#### 1. Plaintiff did not suffer an adverse action under the standard for retaliation claims.

Pepco does not dispute that Plaintiff engaged in protected activity when he filed his DCOHR charge in May 2004. But Plaintiff has not demonstrated that he suffered an adverse action sufficient to satisfy the second element of the prima facie test. The Supreme Court recently held that in the retaliation context, an action is "materially adverse" if it is harmful to the point that it could dissuade a reasonable worker from making or supporting a charge of discrimination. White, 126 S.Ct. at 2409.

Plaintiff claims in his Complaint and Motion that Pepco retaliated against him by issuing him the DML and allegedly "downgrading" his performance evaluation from "outstanding" to "needs improvement." See Compl. ¶¶ 11, 14; Plaintiff's Motion, at 5. Although this Court determined that these actions were sufficiently pleaded to constitute adverse actions under the White standard and therefore to survive a motion to dismiss, the evidence adduced in discovery demonstrates that in this case, a reasonable employee would not be dissuaded from filing a charge as a result of Pepco's actions.

First, Plaintiff suffered absolutely no negative consequences as a result of the DML. This Court has held – in cases decided after White – that formal discipline with no consequences is not sufficient to constitute an adverse action for purposes of retaliation. See, e.g., Edwards, 456 F. Supp. 2d at 88 (letter of discipline that has no effect on an employee's grade or salary level, job title, duties, benefits, or work hours, and whose effect on the employee's chances of being promoted is speculative at best, does not constitute an adverse action); Harper, 456 F. Supp. 2d at 29 (7-day suspension where plaintiff was not required to

be absent from work and did not suffer a pay reduction, and where suspension was later expunged, bore no consequences and thus was not adverse action).

Such is the case here. After receiving the DML, Plaintiff remained in the same position, with the same level of benefits, and initially the same salary. Ex. 2, at ¶¶ 15-16. Significantly, in early 2005, Plaintiff received a pay <u>increase</u> as well as a special incentive payment for exempt employees. Ex. 1, at 66-67. Moreover, each of Plaintiff's performance evaluations since the DML has been at the level of "fully acceptable" or above. <u>Id.</u> 1/ Finally, there is no Pepco policy disqualifying Plaintiff from seeking a promotion due to the DML. <u>Id.</u> at 54-55. The Supreme Court has made clear that "[c]ontext matters," and that the "impact of workplace behavior often depends on a constellation of surrounding circumstances." <u>White</u>, 126 S.Ct. at 2415. In the context at issue, it would be unreasonable for Plaintiff to be dissuaded from filing a charge because he received a DML.

Second, Plaintiff's 2004 performance evaluation was in no way "materially adverse." Plaintiff received an overall rating of "fully acceptable" on this evaluation, which was the same rating he had received in all prior performance evaluations at Pepco. Ex. 1, at 67, 152; Ex. 2, at ¶ 17; <u>see also</u> 2004 Performance Evaluation, attached hereto as Exhibit 10, at 3. Accordingly, the evaluation was not negative, nor was it "downgraded," as Plaintiff alleges. This fact distinguishes this case from those where plaintiffs received objectively poor evaluations, or appraisals that were lower than their previous ones and thus could be viewed as materially adverse. <u>See, e.g.</u>, <u>Richardson v. Gutierrez</u>, __ F. Supp. 2d __, 2007 WL 575495, at *4 (D.D.C. Feb. 26, 2007) ("unfavorable" review was adverse); <u>Pegues v. Mineta</u>, No. 04-2165 (GK), 2006 WL 2434936, at *7 (D.D.C. Aug. 22, 2006) (evaluation lower than in previous years was adverse).

---

1/    An employee can receive one of three possible overall ratings on a performance evaluation – "outstanding," "fully acceptable," and "needs improvement." Ex. 2, at ¶ 17.

Furthermore, Plaintiff's overall rating was comprised of ratings he received in ten different categories. Ex. 2, at ¶ 17; Ex. 10, at 3. Plaintiff received a "needs improvement" rating in only two of the ten categories. Ex. 1, at 152; Ex. 2, at ¶ 17; Ex. 10, at 3. And he only challenges the "needs improvement" rating he received in the Communications category, claiming he should have received an "outstanding" rating. See Ex. 1, at 152-54; Ex. 10, at 3, 4-5  But significantly, Plaintiff admits that had he received such a rating, his overall performance rating would have remained at "fully acceptable." See Ex. 1, at 152-54. A reasonable employee simply would not be dissuaded from filing a charge where the overall result would be the same if the alleged "adverse action" had not occurred.

Because Plaintiff cannot demonstrate that Pepco took an adverse action against him, his prima facie case must fail.

### 2. There is no causal connection between Plaintiff's protected activity and any alleged adverse action by Pepco.

Even if the Court finds that Plaintiff did suffer an adverse action, the prima facie case fails in any event because he cannot establish a causal link between his DCOHR charge and the adverse action. Plaintiff presents absolutely no evidence of causation other than the temporal proximity between his charge and the issuance of the DML. See Plaintiff's Motion, at 6. 2/ Where temporal proximity alone is the basis for establishing causation, the proximity must be "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). In Clark County, the Supreme Court held that 3- and 4-month lapses between the protected conduct and the adverse action were insufficient to demonstrate a causal connection. See id. at 273-74.

---

2/  Plaintiff wrongly suggests that the temporal proximity of the DML should be measured against the mediation of his DCOHR charge, which occurred on July 15, 2004. See Plaintiff's Motion, at 6. But Plaintiff's statutorily protected activity was the filing of the charge, not the subsequent mediation of the charge. Thus, the appropriate date of protected activity is May 6, 2004, the day Plaintiff filed his DCOHR charge.

In this case, Plaintiff's protected conduct occurred on May 6, 2004 when he filed his DCOHR charge. It is unclear whether Plaintiff is arguing that the DML occurred on July 29, 2004 when Plaintiff met with Pepco management regarding the DML, or on September 2, 2004, when Mr. Farrell issued him the memorandum confirming the DML. See Plaintiff's Statement of Material Facts as to which he Contends There is No Genuine Dispute, at 1; Plaintiff's Motion, at 6. Either way, the temporal proximity alone is not sufficiently close to establish causation. If the adverse action occurred September 2, then approximately four months elapsed after the protected conduct, which the Supreme Court clearly held was too long. See Clark County, 532 U.S. at 273-74. Even if the adverse action is measured on July 29, the lapse of just under two months is still too long to establish causation. See Edwards, 456 F. Supp. 2d at 92 (two-month interval "create[s] too wide a temporal chasm to give rise to an inference of causal connection"); Baker v. Potter, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (two-month gap insufficient to show causal connection). Thus, given the absence of any other evidence supporting causation, the proximity between Plaintiff's charge and the adverse action is simply not close enough to establish such a connection, and for this additional reason, Plaintiff's prima facie case fails.

### B.    Pepco Has Articulated A Legitimate, Non-Discriminatory Reason For Taking Action Against Plaintiff.

Even if this Court determines that Plaintiff has established a prima facie case of retaliation, Pepco has met its burden of proffering a legitimate reason for disciplining Plaintiff and giving him the ratings in his 2004 performance evaluation.

As described above, Pepco disciplined Plaintiff for two incidents that occurred in April and June 2004. In April, Plaintiff refused to instruct his employees to comply with Pepco's parking policy. See Ex. 1, at 128-30; Exs. 3-5. Plaintiff readily admitted that he knew he was required to instruct his subordinates to follow the policy, but that he chose not to do so because he disagreed with it. See Ex. 1, at 93-96. Instead, he reprimanded the

supervisor charged with administering the policy and did not tell his employees to follow it until expressly instructed to do so by his own supervisor. See id. at 95-96, 129-30; Exs. 4-5.

Plaintiff continued this pattern of insubordination in June 2004 when he communicated directly with the Union regarding the job classification issue being discussed in CBA negotiations. Plaintiff has admitted that as a supervisor, he had certain responsibilities that were not necessarily written down as a specific policy. See Ex. 1, at 25, 29. He has also admitted that he knew Pepco had a team in charge of handling the CBA negotiations, and that he was not a member of this team. Id. at 101-02. Plainly, Pepco reasonably expected that its supervisors would know not to engage in direct discussions with the Union on this issue in CBA negotiations. See id. at 32-33, 101-10, 117-21; Ex. 7.

Nevertheless, the day before the CBA ratification vote, Plaintiff copied two Union officials on a memorandum he sent to Mr. Farrell, in which he criticized the position Pepco had taken regarding the job classifications of two of his subordinates. See Ex. 1, at 106-09; Ex. 6. Moreover, after being specifically instructed by Pepco's Vice President not to take further action regarding this issue, Plaintiff contacted the Union again several days later and continued undermining Pepco's policies. See Ex. 1, at 118, 120-22; Exs. 7-8. Insubordinate conduct such as that demonstrated by Plaintiff has been repeatedly held by courts to constitute a legitimate reason for taking adverse action against an employee. See, e.g., Smith v. Dist. of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005); Amiri v. Capital Restaurants Concepts, Ltd., No. 03-606 RJL, 2005 WL 3273971 (D.D.C. Aug. 30, 2005).

### C.    Plaintiff Has Failed To Present Any Evidence Of Pretext.

Because Pepco has satisfied its burden to articulate a non-discriminatory reason for its conduct, Plaintiff must show that Pepco's articulated reason is pretextual. The pretext standard can be satisfied by demonstrating that the employer's explanation is unworthy of credence, or by weighing a variety of other factors, such as: (1) the strength of

plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination, such as independent evidence of discriminatory statements or attitudes on the part of the employer. See Nurriddin v. Goldin, 382 F. Supp. 2d 79, 89-90 (D.D.C. 2005) (citing Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998)). Plaintiff cannot rely on any of the above to demonstrate pretext.

To begin, there is absolutely no evidence demonstrating that Pepco's explanation for its actions are not credible. To the contrary, the record indicates that Pepco acted immediately to respond to each of Plaintiff's incidents of misconduct at the time they occurred. Mr. Farrell met with Plaintiff in April 2004 to make clear that he was required to instruct Ms. Carter-Moton to comply with the parking policy. See Ex. 1, at 95-96. Later, when Plaintiff sent the June 23 email to the Union, Pepco's Vice President responded with an email the same day instructing Plaintiff to cease communications and indicating that his conduct was inappropriate. Ex. 1, at 118; Ex. 7. After Plaintiff disregarded this instruction, Pepco met with him on two occasions in July, during which it first discussed and then issued discipline in the form of the DML. See Ex. 1, at 135, 148; Ex. 2, at ¶¶ 12-13. This discipline was later memorialized in Mr. Farrell's September 2 memorandum. Ex. 1, at 150; Ex. 9. 3/

Moreover, Plaintiff fully admits that he engaged in the conduct at issue, and that he cannot identify any other individual who engaged in similar conduct but was not disciplined. Ex. 1, at 146. Although Plaintiff may believe that it was unfair for him to be disciplined, his personal view that Pepco's reasoning was flawed is insufficient to give rise to liability. See Santa Cruz v. Snow, 402 F. Supp. 2d 113, 125 (D.D.C. 2005). Moreover, this Court does not sit as a "super-personnel department" that reexamines an employer's business

---

3/   Additionally, Plaintiff's conduct in 2004 was not the first instance of such insubordination. He also received a "needs improvement" rating in the Communications category of his 2002 performance evaluation for communicating expressing to other Pepco employees his disagreement with Pepco's policies. Ex. 1, at 155-56.

decisions. Walker v. Dalton, 94 F. Supp. 2d 8, 16 (D.D.C. 2000). Pepco's actions demonstrate that it firmly believed that Plaintiff's conduct was inappropriate.

In addition, Plaintiff has no other credible evidence that attacks Pepco's explanation for its actions. Although he points to Mr. Farrell's knowledge of the fact that Plaintiff had filed a charge, this knowledge alone does not make Pepco liable for retaliation. Indeed, no one at Pepco ever informed Plaintiff that he should not have filed the charge or tried to prevent him from doing so. Ex. 1, at 86. Furthermore, Pepco never indicated that the reason Plaintiff was being disciplined was because he filed a charge. Id. at 86, 135-36.

Finally, Plaintiff has not provided any other evidence of discrimination. He could not identify any instance where he had heard Mr. Farrell, Mr. Gausman, or Ms. Appuglies – the three people involved in the alleged "adverse actions" – make any racist statements, nor did he know of any other Pepco employees who had heard these individuals make such statements. See Ex. 1, at 148. In fact, Plaintiff readily admits that his belief that Mr. Farrell is biased against blacks is "purely subjective." Id. at 57-58. An employee's subjective perception of racism or unfair treatment is insufficient to demonstrate that the employer's proffered reasons for its actions are pretextual. See Nurriddin, 382 F. Supp. 2d at 95; Broderick v. Donaldson, 338 F. Supp. 2d 30, 45 (D.D.C. 2004). 4/

In sum, Plaintiff's inability to point to any evidence indicating that Pepco's articulated reasons for its actions were pretextual, coupled with his already weak prima facie case (assuming he even states one), is fatal to his claims.

---

4/    Moreover, in Plaintiff's 2005 evaluation, he received an "outstanding" rating in the Communications category from Mr. Farrell, undermining any suggestion that Mr. Farrell was intent on retaliating against him for his protected conduct. See Ex. 1, at 158.

## CONCLUSION

For all the foregoing reasons, Pepco respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment, grant Pepco's Motion for Summary Judgment, and dismiss the remaining claims in this action.

Respectfully submitted,

/s/
William P. Flanagan (#419287)
Christine M. Burke (#492074)
HOGAN & HARTSON LLP
8300 Greensboro Drive, Suite 1100
McLean, Virginia 22102
(703) 610-6100 (telephone)
(703) 610-6200 (facsimile)

Counsel for Defendant Potomac Electric Power Company

Of Counsel:

Jill D. Flack (#420020)
Associate General Counsel
Pepco Holdings, Inc.
701 Ninth Street, N.W., Suite 1100
Washington, D.C. 20068
(202) 872-2756 (telephone)
(202) 872-3281 (facsimile)

Dated: March 30, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of March, 2007, a true and accurate copy of the foregoing Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment, as well as the accompanying exhibits and other related documents, were served electronically via the Court's electronic case-filing system, as well as by first class mail, postage prepaid, upon:

>Jerome E. Clair, Esq.
>1200 G Street, NW
>Suite 800
>Washington, D.C. 20005
>
>Counsel for Plaintiff

>_____/s/_____
>Christine M. Burke