IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHILIP A. BROWNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-cv-01177-RWR |
| | ) | |
| POTOMAC ELECTRIC POWER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL
FACTS AS TO WHICH HE CONTENDS THERE IS NO GENUINE DISPUTE**

Defendant Pepco, pursuant to Local Civil Rules 7(h) and 56.1, hereby submits its Response to Plaintiff's Statement of Material Facts as to which he contends there is no genuine dispute ("Plaintiff's Statement"). The vast majority of the assertions in Plaintiff's Statement are either undisputed or immaterial to this case. Thus, unless otherwise noted, Pepco has only responded to those statements that are both disputed and material to the issues to be determined by this Court. 1/

1.    Pepco disputes that Kenneth Farrell, Plaintiff's supervisor, told him on July 29, 2004 that he would be disciplined for actions he had taken on April 16, 2004. Mr. Farrell held an initial meeting with Plaintiff on July 16, during which he stated that Pepco was considering issuing formal discipline based on Plaintiff's two incidents of misconduct – the April 2004 parking issue, and the June 2004 communication with the Union. Ex. 1, at

---

1/    Plaintiff's Statement did not contain numbered paragraphs. To the extent possible, Pepco has responded to each material statement or group of related statements with which it disagrees in chronological order in which that statement appears in Plaintiff's Statement, and has provided numbering for each of its responses.

134-35; Ex. 2, at ¶ 12. 2/ Subsequently, on July 29, Mr. Farrell, Pepco's Human Resources

Manager Eileen Appuglies, and Pepco's Vice President William Gausman all met with

Plaintiff to formally issue him a Decision-Making Leave ("DML") as a consequence of his

actions in April and June 2004. See Ex. 1, at 148; Ex. 2, at ¶ 13.

      2.     Pepco disputes Plaintiff's characterization of the proposed Separation

Agreement.  On July 29, 2004, Plaintiff met with Mr. Farrell, Ms. Appuglies, and Mr.

Gausman, during which time he was issued a DML. See Ex. 1, at 148; Ex. 2, at ¶ 13.  As is

the usual process when a DML is issued, Pepco explained to Plaintiff that given the

seriousness of his infractions, he had the option of resigning from employment, and he was

given one day off work, with pay, to consider this option.  Ex. 2, at ¶ 15.  In the context of his

option to resign, Pepco presented Plaintiff on July 29 with a Separation Agreement and

Release of Claims containing a severance package, which he could sign if he elected to end

his employment with Pepco. See id.

      3.     Pepco disputes Plaintiff's characterization of the parking incident.

Plaintiff suggests that because he had requested a waiver of the parking rules with respect to

his subordinate, Renée Carter-Moton, he did not act inappropriately by refusing to instruct

her to follow the policy.  In fact, Ms. Carter-Moton had been repeatedly violating the policy

by parking in spaces assigned for other employees. See Ex. 3.  Pepco's General Supervisor

Ted Karnezis asked Plaintiff to instruct Ms. Carter-Moton to comply with the policy, but

Plaintiff refused to do so. See Ex. 1, at 128-30.  Instead, Plaintiff criticized the parking

policy and made clear that he would not remind Ms. Carter-Moton of the need to follow it.

See Ex. 1, at 129-30; Exs. 4-5.  Although Plaintiff may have requested a waiver for Ms.

---

2/     All citations to Exhibits refer to those exhibits attached to and cited in Pepco's
Opposition to Plaintiff's Motion for Summary Judgment/Cross-Motion for Summary
Judgment.

Carter-Moton, she was not permitted to violate the policy in the interim until such waiver request was granted. See Ex. 1, at 93-95, 100; see also Ex. 3.

4.     Pepco disputes Plaintiff's characterization of Pepco's response to his inquiry into the policy preventing his communication with the Union. Although Pepco admits that it did not provide him with a written policy prohibiting such communications, Pepco's supervisors and managers – including Plaintiff – were aware or should have been aware that it is inappropriate to communicate directly with the Union (and in particular, to criticize Pepco's position to the Union) on the eve of a vote to ratify the collective bargaining agreement. See Ex. 1, at 100-110, 117-121; see also Ex. 7.

5.     Pepco disputes Plaintiff's characterization of its "refus[al] to remove" the DML from his personnel file. Plaintiff appealed the issuance of the DML in December 2004, but the appeal was denied because it was untimely filed. See Letter of March 18, 2005 from E. Jenkins to P. Browne, attached to Plaintiff's Motion for Summary Judgment.

6.     Plaintiff's performance was not "downgraded" from "outstanding" to "needs improvement" in his 2004 performance evaluation. He received an overall rating of "fully acceptable" on his 2004 performance evaluation, which is the same overall rating he had received in all his previous performance appraisals at Pepco. Ex. 1, at 151-52; Ex. 2, at ¶ 17; Ex. 10, at 3. But he received a "needs improvement" rating in the "Communications" category of his evaluation. Ex. 1, at 152; Ex. 2, at ¶ 17; Ex. 10, at 3, 4-5. Plaintiff appealed the "needs improvement" rating with respect to the Communications category, and Mr. Farrell responded to his appeal. Ex. 1, at 186.

7.     Pepco denies that anyone in management informed Plaintiff that the evaluation could not be changed because of the DML. Although the language used in the Communications category of the performance evaluation explained how the April and June incidents contributed to that rating, the fact that Plaintiff received the DML for these

infractions had no bearing on his performance evaluation. <u>See</u> Ex. 2, at ¶ 17. Indeed, the

DML is not mentioned anywhere in the evaluation itself. Ex. 1, at 187; Ex. 10, at 4-5.

Respectfully submitted,

_____/s/_____
William P. Flanagan (#419287)
Christine M. Burke (#492074)
HOGAN & HARTSON LLP
8300 Greensboro Drive, Suite 1100
McLean, VA 22102
703-610-6100 (telephone)
703-610-6200 (facsimile)

Counsel for Defendant Potomac Electric
Power Company

<u>Of Counsel:</u>

Jill D. Flack, Esq.
Associate General Counsel
Pepco Holdings, Inc.
701 Ninth Street, N.W., Suite 1100
Washington, D.C.  20068
202-872-2756 (telephone)
202-872-3281 (facsimile)

Dated:  March 30, 2007