

Philip A Browne /BENN/PEP
06/23/2004 01:36 PM

To  Kenneth T Farrell/FSC/PEP@PEP

cc  William M Gausman/BENN/PEP@PEP, Eileen M Appuglies/PWMILL/PEP@PEP, John A Coleman/IBEW/PEP@PEP, Joseph E

bcc

Subject  'Exploration of Side Agreement'

Ken:
As we had discussed, I am sending you my request for a side agreement, as recommended by IBEW officials. Please see the attached documents, thanks !!!
Phil.

==========================================
Philip A.Browne, P.E.
Supervisor, Engineering Liaison
Distribution Engineering & Construction Division
(202) 388-2122 (W)
(202) 388-2228 (F)

- Exploration of Side Agreement.doc      Attachment A (Rosa).pdf      Attachment B (Renée).doc



EXHIBIT
Browne 3
MK 1/30/07

**pepco**  Potomac Electric Power Company

701 Ninth Street, NW
Washington, DC 20068

June 23, 2004

**TO:**     Kenneth Farrell, P.E.
            Manager, Distribution & Transmission Engineering

**FROM:**   Philip A. Browne, P.E.
            Supervisor, Engineering Liaison

**SUBJECT:** Exploration of Side Agreement
            Job Processor Clerk B (140047), Rosa Daniels
            Job Processor Clerk A (140024), Renee Carter-Moton

As a consequence to recent conversations/meetings with yourself, IBEW representatives and Job Processors Clerk A and B, I am again pleading to have what I fervently determine to be a grave management injustice corrected or ameliorated. When the Distribution Designer Agreement was formulated in February 2003, it was noted that the Processing & Liaison Clerks (currently, Processing & Liaison Administrators) were being upgraded. In exploratory meetings prior to the finalization of the Distribution Designer Agreement, our engineering administrative group had no representation and no one with any understanding of the issues in my section. Evidently, the Job Processor positions were overlooked for upgrades, but not for benchmarking, since it appears that the upgrades were in an attempt to align with the Job Processor A (pay grade 8), but in fact aligned with the Job Processor B (pay grade 7), see attachment A. This "oversight" was acknowledged by Mr. John Coleman, President, IBEW, in subsequent meetings/discussions with Rosa Daniels and Renee Carter-Moton.

I was informed that the committee members formulated were originally selected to solely participate in the interest of the Distribution Designer positions. As it later turned out, upon completion of the Distribution Designer position, other positions were subsequently addressed and upgraded.

With reference to the promotion of the Processing & Liaison Administrators from a pay grade 7 to pay grade 8, Ms. Daniels wrote the Union on February 28, 2003, requesting equal treatment and appending a chart comparing the duties of the two positions. In fact, the correspondence clearly show that the 18 duties were equivalent/identical, plus an added listing of "additional duties specific to the Job Processor Clerk B". On March 10, 2003, Ms. Daniels and Ms. Carter-Moton met with Mr. Coleman where he explained to Ms. Carter-Moton that she would have to outline her



Potomac Electric Power Company

701 Ninth Street, NW
Washington, DC 20068

duties that stood separated from the other positions mentioned. Mr. Coleman later picked this material up from her for review.

Through this tentative labor agreement, we are finding that the Processor positions were not successfully communicated and/or included in the upgrading process. Ms. Carter-Moton telephoned Mr. Coleman to receive an explanation of the standings. Mr. Coleman stated to her what he believed to be the facts and in turn had Mr. Joseph Hawkins speak with her as well. I eventually spoke with Mr. Hawkins and have gotten the impression that there is a "passing of the buck" from IBEW to Pepco's management. I have been informed of all developments and have concluded that there has been little, if any, effort on Pepco's management to **truly, fairly and honestly** address the above issue. I believe the issue was not presented to management clearly; therefore, confusion may have caused the petition to be unsuccessful. It was suggested that I formulate this side agreement in order to have this matter re-addressed and evaluated.

The Job Processor Clerk B position should have been automatically upgraded to a pay grade 8 at the time of the Distribution Designer Agreement and by default, the Job Processor Clerk A position would have advanced to a pay grade 9. I had interviewed Mr. James Slayton, my predecessor and was told that a great effort was exerted in getting the Job Processor positions upgraded to reflect the significant differences in the work versus the Processing & Liaison Clerks. As noted in the memo (attachment B) from Ms. Carter-Moton to Mr. Coleman, the Job Processor Clerk A position is significantly separate from the Processing & Liaison Administrator position due to permitting knowledge in the three jurisdictions of the District of Columbia, Prince George's County and Montgomery County local, municipal and federal governments, whereas, the Processing & Liaison Administrators (DC and MD) are assigned to one specific jurisdiction. Other separate duties are given in the attachment to show their distinction.

In interviewing Ms. Daniels before and after her departure from my section, I got the distinct impression that the lack of resolution of this issue was a factor in her decision to look "elsewhere". Does approving her petition and thereby upgrading the Job Processors Clerk B, simultaneously by default, upgrading the Job Processor Clerk A, create an economic burden on Pepco? For years there have been several **vacant positions** in my section, such as the **Job Processor Clerk C (140026), Pricing Clerk A (140031), Work Record Clerk (140001), Prior Rights Aide B (006012)** and the recently vacant Job Processor B (140047) to be temporarily filled. The loss or lack of personnel in these areas has left us with one knowledgeable and skilled employee to maintain the entire workload. WMIS has improved some of our processes, but there are many others that are not WMIS related and still have to be completed.

Having been a manager/supervisor for over three decades (third tier to first line), I value employee morale heavily, particularly for productive and loyal employees. It would be **fair** for Asset Management to take corrective action to address an issue that has already been proven yet unduly prolonged.

**pepco**  Potomac Electric Power Company

701 Ninth Street, NW
Washington, DC 20068

Finally, I assert that upgrading these positions would prove to be a fruitful asset in our future quest to obtain a skilled individual in the event we are able to seek permanent personnel in our group. Prior knowledge of the CMS and Compatible Unit systems background are essential in the job processing of our work which would take years to achieve. Your earliest attention and response are solicited.

Thank you.